Good morning, Your Honors. May it please the Court, Carolyn Wiggins from the Federal Public Defender's Office for Mr. Fairweather. Your Honors, I thought I would not spend a lot of time on the question of this 90 days following state collateral review of a conviction. That question of whether the clock is running or not running during that period is now before the Supreme Court, as I stated in a 28-J letter that I hope was received. Dwight v. Klitschke, right? Well, that's the Ninth Circuit precedent. Right. The U.S. Supreme Court has just decided to hear… Lawrence v. Florida? Correct. And that will construe that part of 2244d2 about how long a State petition is pending, whether the 90 days after the highest State court denies the State petition, whether the clock is running or not. Well, then should we defer submission in this case? Well, Your Honor, I can't. Lawrence. I believe that Mr. Fairweather should prevail regardless of that. So I would only ask that you do that if you disagree with my alternate argument. So moving to the alternate argument, I wanted to just spend a little time going over the date that Mr. Fairweather was made aware of pertinent facts. Well, he started a look on June 12th of 2000. That's the date that he finally received information from a paralegal who reviewed his file. And that paralegal saw that Steve Plesser, whose name meant nothing to Mr. Fairweather, had represented a government witness. Now, this paralegal knew enough about the criminal defensive community that he thought Steve Plesser sounds like someone at the Placer County Public Defender's Office. So he researched that and found out, indeed, Steve Plesser worked at the Placer County Public Defender's Office at the time of Mr. Fairweather's case or trial. And he wrote to Mr. Fairweather revealing this conflict of interest and saying, I think you should hire an investigator to find out about other possible conflicts. What was the connection? Assuming that there may have been a conflict of interest somewhere in the public defender's office because of representing different clients, how was that related or how would that taint the guilty plea here? Does he claim that somebody talked him into pleading guilty when he wasn't guilty? Exactly. That this conflict of interest was complicit in that? Yes, Your Honor. And some of these facts are in the record, some are not yet, because as we were developing the record, the judge in district court said, I'm going to dismiss this case on time for this. So I do want to be clear that not all of the facts are in the record below. However, the basic idea is that the Placer County Public Defender's Office had represented Mr. Fairweather's son in the past. And Mr. Fairweather did not learn of this until August of 2000. But Mr. Fairweather's son was a key government witness, but was also potentially threatening. There were the threat that he was going to be charged as an accessory after the fact. So the idea is that because of the Placer County's public defender's loyalty to the son, they urged Mr. Fairweather to plead guilty. And certainly there's a lot of corroboration for this, both in things that aren't yet in the record and in even the record of the proceedings. This was a serious case that sort of was being developed. There's evidence that they were doing some psychiatric work, looking at mental health offenses, and then suddenly, without any kind of written agreement, Mr. Fairweather enters a guilty plea. Our intention, if we're allowed to develop this case, is that we have some investigation that's back in the South that's not yet in the record, but is that the reason is that they were told if the father doesn't enter a guilty plea, we're going to charge the son. So that's the basic conflict. And the magistrate judge and the district court agreed that Mr. Fairweather wasn't informed of this conflict until at the earliest the summer of 2000. Now, what the district court found was that June 12th of 2000 should be the starting date for the statute of limitations running, basing that on the fact that the father didn't enter a guilty plea. If somebody was pressuring Mr. Fairweather to plead guilty to a crime he didn't commit in order to help his son, he would have known that was happening. Right. If it was happening, he would have known about it back in time to do something about it, wouldn't he? Well, he didn't know. How does this toll the statute of limitations? Because Mr. Fairweather did not know that the Placer County Public Defender's Office had represented his son in his son's own case, so had there's case law about He did know that they were trying to get him to plead guilty and were apparently offering to go easy on his son if he pleaded guilty. He must have known that if it's true, if he isn't just making it up. Right. He must have known it while it was going on. Right. Unless he's really stupid. He didn't know the Placer County Public Defender's relationship with his son, the true nature of the relationship, their duty of loyalty. He didn't know that at the time. He learned that later, or learned later that there may be a conflict. You know, I don't know that he would have, because in the memorandum prepared by the defense attorneys for the court, they do reveal various conflicts, but they don't even mention the representation of the son. So would he have any way of knowing that his son had a lawyer? He – his son was an adult who had lived – Mr. Fairweather and the son's mother had divorced sometime before all of this. The son had been living with the mother for a lot of his teenage years, was living independently for a while. Mr. Fairweather, my client, the father, didn't know about the criminal action that his son had dealt with. He didn't know there was a case, didn't know – certainly because of that, didn't know who, if anyone, had represented his son. Did his son have strike problems, or like one, two, three in your California system? I don't – Because this could maybe – I could see where somebody could lean on, on a family member if there were strike problems involved. Your Honor, I don't think he had strike problems, but certainly if he had been charged as an accessory to a murder, he would have had grave problems. And so I see I have two minutes left. Unless you have any other questions right now, I'd like to reserve the remainder of my time. You may do so. Thank you. We'll hear from the State. Good morning, Your Honors. May it please the Court stand cross for appellate. I'd first like to address the question of the 90-day period for which there should be no tolling for the time period in which a person could file a cert petition to the U.S. Supreme Court. The reason for that is squarely because of the holding and carryover use of staff hold, which held that only a timely appeal tolled at the one year limit. Is this the issue for the Supreme Court? Pardon? Is this the issue that the Supreme Court has now taken? Actually, no, it isn't. That's what I was getting to, Your Honor. In Lawrence, the question is, if a person has filed a timely cert petition within the 90 days, does it toll? And the sub-issue is, if not, whether there's equitable tolling. In this case, there was no cert petition filed. And Kerry v. Southolt is absolutely controlling on this because the holding itself states only a timely appeal tolls at this one-year limitation period for the time between the lower court's adverse decision and the filing of a notice of Kennedy. On the court's holding, only timely petitions cause an application to be retroactively pending. So, ergo, you cannot have tolling if you don't file any petition at all because there's nothing to toll retroactively. So basically, Mr. Fairweather is not entitled to tolling for the time during which he could have, but did not, timely file a petition in a higher court, whether it be a state court under the statute 2244d2, which explicitly refers to state courts, as this Court recognized in White v. Klitschke, the distinction between a cert petition which is to a Federal court, and he also is likely not entitled under 2244d2 for the time to file to a Federal court because the statute doesn't provide for that. Similarly, this Court also could deny that 90-day period on the basis of White v. Klitschke's finding and the fact that Abella, the one circuit court that addressed this matter in the distinct minority, White was in the majority, misinterprets the holding in Saffold, as does Petitioner. And Lawrence v. Florida, as I stated before, applies to a different matter where it has been filed. So your point is that Lawrence, whatever Lawrence decides, it will have no impact on our case whatsoever. As you might have some dicta, if they chose to have dicta and talk about how Saffold is distinguished. Well, that's what concerns me, is they could say that it isn't necessary to actually have filed in dicta. They'd have to contradict their explicit holding in Kerry v. Saffold. And also, you know, it's been reinterpreted by two other U.S. Supreme Court cases. Well, but Clay has come since. Clay, Your Honor, applies to a very radically different statute, 2255, dealing with a Federal defendant on direct appeal. And as you know, 2244d1a refers to direct appeal for the time in which you can file. It's provided by statute, but 2244d2 talks about not the time in which it's available, but when a properly filed State petition is pending. So it's a different statute, basically. So I don't think there's any way they would be able to get around the statute or the prior U.S. Supreme Court holding on that in this case. I also wanted to point out very quickly that Mr. Fairweather did not exercise due diligence in any event in discovering the factual predicate of his conflict of interest claim. The record is rife with references throughout his petition, as a matter of fact, indicating that he knew about the conflict of interest. You can't not read that three-page colloquy between the Superior Court judge at the plea hearing and Mr. Fairweather and realize that he did not have adequate notice. He even rejected the offer of the Court to provide neutral counsel to explore that potential conflict, and he declined to do it. His claims in the petition are in direct contradiction to his statements in open court, number one. Number two, his actual petition is in contradiction the appellee's, appellant's argument on appeal, where they talk about Corey Trowbridge being a minor government witness. In fact, Mr. Fairweather, in his Federal petition specifically, states that he is, in fact, the at the core of the prosecution's case. So if he's at the core of the prosecution's case, and Mr. Fairweather states, I didn't find out about the factual predicate of my claim until May 31, 2000, and explicitly when I found documents on June 12th when Corey Trowbridge was divulged to me as being represented by the public defender. At the very latest, the district court is absolutely correct in saying that the time starts to run at that point. And so there's no way that Mr. Fairweather can meet the statute of limitations, even with the best amount of time given to him on the circumstances that the district court stated. And then one last point. The district court did not find that there was tolling for the time period from finality up to the time he hired counsel. In fact, Mr. Fairweather had ample opportunity to inquire. As he states in his petition, he became aware of a potential conflict of interest or suspected one sometime after the plea and before finality. So he had many, many months before he hired his attorney in which he could have simply asked his son, by the way, when you were testifying in the preliminary hearing and you were one of those witnesses that might have had a conflict, why, son, who were you represented by? I'm curious. Was it the public defender? He never bothered to ask his son during that period. He never bothered to ask the trial counsel for information about who were these witnesses that were represented that he knew about. If he had a suspicion, he should have followed up on it. There are no other further questions. State's only. Now, I would like to get back to the 90-day business again. It seems to me in interpreting the statute, the key thing is whether State post-conviction relief or other collateral review, whether State post-conviction modifies State post-conviction or also the State other collateral review. That's what the Sixth Circuit in the Abella case was interpreting. And they said that with regard to that question, they come up with a different conclusion than you do. Other collateral review in federal court under Duncan v. Henry I believe pretty much settled that going to federal court doesn't toll. What settles it? It's fairly settled after Duncan v. Henry that by going to federal court rather than State court, you don't toll the statute of limitations. Well, if State modifies both post-conviction and other collateral review, that would be your view of it. However, if other collateral review is not modified by State, then the contrary conclusion would be. But still, Your Honor, respectfully, he would have to actually file it timely pursuant to Kerry v. Saffold. You have to file your collateral review in a timely manner. If you don't, you can't get retroactive tolling. That's specifically held in Kerry v. Saffold. So that even assuming you're correct that that alternative is applicable or could be potentially applicable, it wouldn't apply to this Petitioner. It might in Lawrence, where they actually filed it within the 90 days. But you cannot get tolling unless you file within that 90-day period. And there was no filing at all here, right? No filing at all. There's nothing to toll. Yeah. Well, how about how do you know it's really final until whether it has been filed or not? California Supreme Court decisions are final upon filing, as we've found in an argument before. If it's other collateral review, it could be other collateral review by the Supreme Court. And then there's nothing pending in the meantime, though, Your Honor. Well, does it have to be pending? How do you know it's final until it either is filed or it's not? 2244d2 requires application to be filed before it's pending. Nothing pending. Sixth Circuit doesn't agree. But you're contrary to the Sixth Circuit. And why? Well, let's see. Okay. Thank you, counsel. Ms. Wiggin, you have some reserve time. Thank you, Your Honors. I couldn't have stated these issues better than Judge Hugg did. But just to let you know, the Clay court ---- I wouldn't interpret that as a ruling from the bench, counsel. No, no, no. Just the ---- I appreciate that. But just the question of what is the United States Supreme Court going to address in Lawrence v. Florida. It is true that factually that case arises out of a situation where somebody did file a petition to the United States Supreme Court. But we don't know what the United States Supreme Court is going to hold. They're going to interpret the very provision that's at issue in this case. In I believe it's the Clay case, they said that ---- and I recognize it's a different context, but for various reasons, they decided you get those 90 days whether or not you file your petition. I don't know what the United States Supreme Court will do in Lawrence v. Florida. They might limit their holding to people who actually file, but they might not. And they might give everyone the 90 days. So that is why if you do not decide to reverse based on the ---- my main argument, I think the prudent thing to do is to wait until we see what the Supreme Court says in Lawrence v. Florida, because it could have bearing on this case. In terms of just to briefly touch on what Mr. Cross said on Mr. ---- that Mr. Fairweather should have known of this particular conflict vis-à-vis his son earlier, you know, it's shocking that he wasn't brought to the conflict proceedings. It's shocking that there was nothing in the clerk's transcript about them, no record of them. His attorneys that he hired had on appeal and his habeas attorney didn't know of this because there was nothing in the record about it. He did his best to get the documents as soon as he could. The district court did not disagree with that, and I submit that he couldn't have known until the investigator provided him the memo. Thank you. Roberts. Thank you, counsel. The case just argued will be submitted, and we will adjourn. Thank you. Thank you.
judges: Goodwin, Hug, O'Scannlain